## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    vs.                                 No. CR 05-1197 MCA

**NATHAN WEBSTER**,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** comes before the Court on *Defendant Nathan P. Webster's Motion to Suppress Evidence* [Doc. No. 24] filed on July 13, 2005.  The Court held a hearing on Defendant's motion in Las Cruces, New Mexico, on August 16, 2005.  Having fully considered the parties' submissions, the applicable law, the evidence and the arguments of counsel presented at the hearing, and being fully advised in the premises, the Court denies Defendant's motion based upon the following findings of fact and conclusions of law.

## I.    FINDINGS OF FACT

1.    On October 15, 2005, agents of the Lea County Drug Task Force executed a search warrant at Defendant's residence located at 1613 North Camino Del Arco in Hobbs, New Mexico.

2.      The agents obtained the warrant as a result of an affidavit that Agent Jon Martinez prepared and presented to the Magistrate Court of the County of Lea, State of New Mexico earlier on the same date.  [Ex. 1 to Doc. No. 32.]

3.      In the affidavit, Agent Martinez asserts that:

On Friday, October 15, 2004, Affiant received information from a confidential informant regarding the defendant, Nathan Webster.  The confidential informant identified the defendant as a person which sells illegal narcotics.  The confidential informant advised Affiant that he/she saw the defendant in possession of a large quantity of crystal methamphetamine within 48 hours of the above listed date.  The defendant was seen in possession of the substance while at the defendant's residence, located at 1613 Camino Del Arco Street, Hobbs, New Mexico.  The defendant resides with his girlfriend, identified by the confidential informant as Kasi Baldwin.  The confidential informant admitted to having been able to recognize the substance as methamphetamine through life long use.   In addition, the confidential informant advised Affiant that he/she saw firearms at the defendant's residence and on his person which are used to protect him and his illegal narcotics.

The above did occur in the County of Lea, State of New Mexico.

No records could be located which reflect 1613 Camino Del Arco as the defendant's address.   The confidential informant stated the defendant purposely avoids using his name when renting a home or obtaining utilities.  The reason for placing his residence and utilities in the name(s) of others is to avoid law enforcement detection and/or criminal prosecution if caught committing a criminal act.

The confidential informant has proven himself/herself reliable and credible by providing information on two or more occasions which has led to the seizure of large quantities of illegal narcotics and the arrest of person(s) involved in the sale of illegal narcotics.

On the above listed date, at approximately 1325 hours, Affiant spoke to the property owner, Elizabeth Simon.  Simon advised Affiant she is renting the above listed property to Kasi Baldwin and the defendant, Nathan Webster.

[Ex. 1 to Doc. No. 32.]

4.    The affidavit also identifies with particularity the items to be seized in the search (including methamphetamine and firearms) as well as the places to be searched (Defendant's residence and certain vehicles therein, including a "GMC sport utility vehicle").[1]  [Ex. 1 to Doc. No. 32.]

5.    Based on Agent Martinez's affidavit, the Magistrate Court approved the warrant permitting the executing agents to search and seize property specifically identified therein.  [Ex. 1 to Doc. No. 32.]

6.    As a result of the execution of the search warrant on October 15, 2004, agents seized several firearms, a large amount of cash, a quantity of methamphetamine and prescription drugs, and other items commonly associated with drug trafficking from the residence.  [Ex. A to Doc. No. 24; Ex. A to Doc. No. 25]

7.    The agents did not, however, arrest Defendant or take him into custody on October 15, 2004.  [Tr. 8-16-05.]

8.    On November 12, 2004, agents of the Lea County Drug Task Force obtained a warrant for Defendant's arrest based on the information obtained from the search of his residence on October 15, 2004.  [Ex. B to Doc. No. 25.]

9.    The Lea County Drug Task Force conducted surveillance of Defendant on the morning of November 12, 2004, watching him drive a GMC Yukon (previously identified

---

[1]It is undisputed that the "GMC sport utility vehicle" named in the affidavit was the same one seized (*i.e.*, the GMC Yukon) and from which the firearm was retrieved on April 4, 2005.

in the search warrant) from his residence to the residence of another person suspected of involvement in illegal narcotics.   [Ex. B to Doc. No. 25.]

10.    Per instructions from the Task Force, a Lea County Sheriff's Deputy then pulled Defendant over while he was driving the GMC Yukon and arrested him pursuant to the arrest warrant issued on that date.  [Ex. 2 to Doc. No. 32; Ex. B to Doc. No. 25.]

11.    As an incident to his arrest on November 12, 2004, officers searched Defendant's person and found approximately 12 grams of methamphetamine concealed in his crotch area, as well as approximately $3,800.00 in cash bundled in a manner consistent with narcotics trafficking.  [Ex. B to Doc. No. 25.]

12.    Based on the evidence obtained from the search incident to Defendant's arrest on November 12, 2004, the agents obtained a second search warrant for Defendant's residence at 1613 North Camino Del Arco, Hobbs, New Mexico; the execution of the second search warrant on that date revealed additional incriminating evidence.  [Ex. B to Doc. No. 25.]

13.    The GMC Yukon that Defendant was driving at the time of his arrest on November 12, 2004, also was seized at that time; however, the agents did not immediately conduct a comprehensive search of the vehicle at the time of Defendant's arrest.  The Yukon was impounded on November 12, 2004, and secured in a police garage or lot.  [Ex. 3 to Doc. No. 33; Tr. 8-16-05.]

14.    The GMC Yukon became the subject of a forfeiture proceeding in the Fifth Judicial District Court, County of Lea, State of New Mexico.  In the forfeiture proceedings,

Defendant asserted that Ritanella Baldwin was the owner of the GMC Yukon, and Defendant did not present the Government with a claim for the return of any personal property in the vehicle during the pendency of the forfeiture proceedings.  [Ex. 3 to Doc. No. 33; Tr. 8-16-05.]

15.     On or about April 4, 2005, while the forfeiture proceedings were pending in state court and the GMC Yukon remained impounded in a police garage, Agent Jamie Moon of the Lea County Drug Task Force entered the unlocked vehicle in order to "check out" the vehicle's "high-end" stereo and DVD system.  Agent Moon's motivation in entering the vehicle was purely personal.  [Tr. 8-16-05.]

16.     Based on his curiosity about how the wiring for the stereo and DVD system was routed through the vehicle, Agent Moon lifted a removable cup holder from the vehicle's front console area and saw a firearm occupying the space immediately beneath the cup holder.[2]  [Tr. 8-16-05.]

17.     Agent Moon reported his discovery of the firearm to Agent Martinez.  [Tr. 8-16-05.]

18.     Although Agent Moon's removal of the cup holder was motivated by reasons of personal curiosity, he did not undertake this action in a bad-faith effort to circumvent the requirements of the Fourth Amendment.  [Tr. 8-16-05.]

_____

[2]The firearm could only be seen if the cup holder was removed.  Agent Moon testified that he drives a Tahoe vehicle (which is very similar in design and features to the Yukon), and his vehicle has a console cup holder similar to the Yukon's.  He further testified that he often removes his cup holder when he spills a liquid and needs to clean the area beneath.

19.     Prior to Agent Moon's accidental discovery of the firearm in the GMC Yukon on April 4, 2005, the vehicle had not been subject to a comprehensive inventory search or search incident to arrest.  [Tr. 8-16-05.]

20.     On June 2, 2005, Defendant was indicted in the United States District Court for the District of New Mexico on one count of possession with intent to distribute five grams and more of methamphetamine; the indictment was later superseded to include one count of carrying a firearm during and in relation to a drug trafficking crime.  [Doc. No. 16, 31.]

21.     On July 13, 2005, Defendant filed a motion to suppress the evidence seized as a result of the above searches on the grounds that the search warrant affidavit dated October 15, 2004, contains false information.  [Doc. No. 24.]

22.     In an affidavit attached to his motion, Defendant states that: "There was no person who was or could be a confidential informant in my residence on either October 13, 14 or 15, 2004, and saw me with a large quantity of methamphetamine."  [Ex. B to Doc. No. 24.]

23.     On August 16, 2005, the Court held a hearing on Defendant's motion, at which time Defendant was afforded the opportunity to make an offer of proof with respect to his claim that the search warrant affidavit contained false information.  [Tr. 8-16-05.]

24.     Defendant's offer of proof at the suppression hearing, which included a limited opportunity to question Agent Martinez, provided no basis for concluding that the agent

intentionally gave false information in his search warrant affidavit or that he acted with reckless disregard for the truth in preparing that affidavit.  [Tr. 8-16-05.]

25.     Defendant failed to make a threshold showing that a further evidentiary hearing is required to determine whether any of the warrants described above are tainted by intentional falsehood or reckless disregard for the truth on the part of the affiant.

26.     The agents were acting in good faith when preparing and executing the warrants described above, and they did not intentionally or recklessly include false or misleading information in the search warrant affidavits.

27.     Based on the totality of the circumstances, the search warrant affidavit provided a substantial basis for finding probable cause to support the search warrant issued by the Lea County Magistrate Judge on October 15, 2004, and that warrant was not tainted by any violation of the Fourth Amendment.

28.     Based on the totality of the circumstances, the evidence seized as a result of the search of Defendant's residence on October 15, 2004, provided a substantial basis for finding probable cause for his subsequent arrest on November 12, 2004, and that evidence was not tainted by any violation of the Fourth Amendment.

29.     Based on the totality of the circumstances, the search of Defendant's person on November 12, 2004, did not exceed the permissible scope of a search incident to arrest and was not tainted by any violation of the Fourth Amendment.

30.     Based on the totality of the circumstances, the seizure of the GMC Yukon that Defendant was driving at the time of his arrest was supported by probable cause to believe

that the vehicle contained contraband and was subject to forfeiture; this seizure also was not tainted by any violation of the Fourth Amendment.

31.     The GMC Yukon lawfully remained in the custody of the Lea County Drug Task Force during the pendency of the forfeiture proceedings in state court.

32.     Based on the totality of the circumstances (including the searches conducted on October 15, 2004, and November 12, 2004), the members of the Task Force, including Agent Moon, had probable cause to believe the vehicle contained contraband and was subject to forfeiture on the date of Defendant's arrest and thereafter.  [Ex. A, B to Doc. No. 25; Tr. 8-16-05.]

33.     It was not until the suppression hearing on August 16, 2005, that Defendant presented testimony that he has an ongoing possessory interest in the GMC Yukon and its contents and that he was driving the vehicle with the registered owner's permission during the relevant time period.  [Tr. 8-16-05.]

34.     At the suppression hearing, Defendant established his standing to challenge the inspection of the front console area of the GMC Yukon that Agent Moon conducted on April 4, 2005.  [Tr. 8-16-05.]

35.     The firearm discovered by Agent Moon on April 4, 2005, was not in plain view until the agent lifted the removable cup holder on the GMC Yukon's front console.  [Tr. 8-16-05.]

36.     Nevertheless, the Fourth Amendment did not prohibit Agent Moon or other agents from searching or looking beneath the GMC Yukon's cup holder while the vehicle

remained in their custody during the pendency of the forfeiture proceedings because, regardless of Agent Moon's subjective beliefs or intentions, the agents had probable cause to search the vehicle for contraband during that period.

37.     At the suppression hearing, Agent Martinez credibly testified that although the GMC Yukon had not been subject to any comprehensive search prior to Agent Moon's discovery of the firearm on April 4, 2005, a comprehensive inventory search of the vehicle would have been conducted pursuant to standard police procedures at the conclusion of the forfeiture proceedings.  [Tr. 8-16-05.]

38.     In the event that the vehicle is forfeited to the Government, Agent Martinez testified that a comprehensive inventory search of the vehicle would be conducted so that any personal effects contained in the vehicle could be returned to their owners before the Government disposes of the vehicle.  [Tr. 8-16-05.]

39.     In the event that the vehicle is to be returned to a private individual at the conclusion of the forfeiture proceedings, Agent Martinez testified that a comprehensive inventory search of the vehicle would be conducted in order to ensure that none of the owner's property was missing from the vehicle and all contraband had been removed from the vehicle.  [Tr. 8-16-05.]

40.     At the parties' request at the conclusion of the suppression hearing, I personally inspected the passenger compartment of the GMC Yukon, including the front console area, and I readily observed that the vehicle's removable cup holder could be lifted out of the console without any special tools or detailed knowledge of automobile mechanics,

and there were no locks or other mechanisms to prevent the removal or lifting of the cup holder.

41.     I also observed that once the cup holder was lifted out of the GMC Yukon's front console area, there was nothing to obstruct one's view of the enclosed area beneath the cup holder.

42.     The space beneath the removable cup holder where the firearm was found would have fallen within the scope of a lawful inventory search of the GMC Yukon.  [Tr. 8-16-05.]

43.     The firearm underneath the removable cup holder of the GMC Yukon would have been inevitably discovered as a result of a lawful inventory search at the conclusion of the forfeiture proceedings.

## II.    LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The primary issues raised by Defendant's motion are whether the search warrant affidavit dated October 15, 2004, contains a legally sufficient factual basis to support the Magistrate Court's finding of probable cause to search Defendant's residence, and whether Agent Moon's lifting of the GMC Yukon's removable cup holder on April 4, 2005, constituted an unlawful warrantless search of that vehicle.  Defendant also contends that if the initial search warrant for the residence or the subsequent warrantless search of the GMC Yukon do not meet the requirements of the Fourth Amendment, then all of the incriminating evidence subsequently seized from Defendant's person, vehicle, and residence must be suppressed as "fruit of the poisonous tree."   The Government denies these contentions.

## A.     The Search Warrant Issued on October 15, 2005

The Court's analysis of Defendant's challenge to Agent Martinez's search warrant affidavit begins with the text of the Fourth Amendment to the United States Constitution, which requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const., amend. IV.  Courts have held that the term "probable cause" is not self-defining, but requires an inquiry based upon common sense informed by the totality of the circumstances found in the particular case.  See United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213 (1983)).   In determining whether probable cause exists to support a search warrant, a judge's task

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting Gates, 462 U.S. at 238).

A judge's decision to issue a warrant is entitled to "great deference" by a reviewing court.  Gates, 462 U.S. at 236.  Accordingly, a reviewing court "need only ask whether, under the totality of the circumstances presented in the affidavit, the [issuing] judge had a 'substantial basis' for determining that probable cause existed."  Artez, 389 F.3d at 1111 (quoting Gates, 462 U.S. at 238-39).  This "totality of the circumstances" test specifically applies to the determination of whether information from an anonymous, unwitting, or confidential informant can establish probable cause.  See id.  While the informant's

"veracity, reliability, and basis of knowledge are all highly relevant" to such a determination,

"a deficiency in one [factor] may be compensated for, in determining the overall reliability

of the tip, by a strong showing as to the other, or by some other indicia of reliability." <u>Gates</u>,

462 U.S. at 233.  Thus, when a search warrant affidavit is sufficient on its face to establish

probable cause based on the totality of the circumstances, there is generally no need "to

reveal the identities of the individuals providing information to the police;  hearsay from

unknown or unnamed individuals has been recognized as acceptable support for a finding of

probable cause." <u>Mathis</u>, 357 F.3d at 1205.

An exception to this general rule may apply when a finding of probable cause is

dependent on false or misleading information that the affiant has supplied with the

knowledge that it is false or with reckless disregard for the truth.  <u>See Artez</u>, 389 F.3d at

1116.  In order to invoke this exception, a defendant may request an evidentiary hearing to

test the veracity of a search warrant under the procedural framework articulated in <u>Franks</u>

<u>v. Delaware</u>, 438 U.S. 154, 171-72 (1978).

Under this framework, an evidentiary hearing is not required unless the defendant

alleges deliberate falsehood or reckless disregard for the truth on the part of the affiant, and

those allegations are accompanied by a sufficient offer of proof.  <u>See Artez</u>, 389 F.3d at

1116.  "Allegations of negligence or innocent mistake" are insufficient to warrant an

evidentiary hearing under <u>Franks</u>.  <u>See</u> <u>id.</u>

To support an allegation regarding the affiant's deliberate falsehood or reckless

disregard for the truth, a defendant should provide affidavits of witnesses or satisfactorily

explain their absence.  Such affidavits or explanations should include a statement of supporting reasons, not merely conclusory denials.  In addition, a defendant seeking an evidentiary hearing must show that, after the challenged portions of the affidavit are stricken, the remaining content of the affidavit is not sufficient to support a finding of probable cause. See id.; Franks, 438 U.S. at 171.

In this case, Defendant claims that Agent Martinez's search warrant affidavit of October 15, 2004, contains false information.  In particular, Defendant challenges the veracity of the statements attributed to the confidential informant in which the informant claims to have witnessed items or activities in Defendant's residence within the 48-hour period ending on October 15, 2004.   Based on his own personal knowledge, Defendant asserts that such statements are false because "[t]here was no person who was or could be a confidential informant in my residence on either October 13, 14 or 15, 2004, and saw me with a large quantity of methamphetamine."  [Ex. B to Doc. No. 24.]

Defendant's affidavit only shows that some of the information the confidential informant gave to Agent Martinez may have been inaccurate.  Neither Agent Martinez's testimony at the suppression hearing nor Defendant's offer of proof concerning this issue provide any basis for concluding that Agent Martinez knowingly falsified the search warrant affidavit or recklessly disregarded the truth.  On the contrary, the unchallenged portions of the search warrant affidavit, as well as Agent Martinez's testimony at the suppression hearing, reflect that he made some effort to corroborate the informant's allegations and to

explain why he believed the informant to be reliable based on past experience.  See United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000).

Under similar circumstances, the Tenth Circuit has concluded that:  "It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit."  United States v. Owens, 882 F.2d 1493, 1499 (10th Cir. 1989) (citing United States v. Orr, 864 F.2d 1505, 1508 (10th Cir.1988), and United States v. Bloomgren, 814 F.2d 580, 584 (10th Cir.1987)).  Thus, "affidavits submitted in support of a Franks-type hearing which attack the informant's reliability and the correctness of the informant's statements 'do not meet the substantial preliminary showing of falsity required by Franks.'"  Id. at 1499-1500 (quoting United States v. Barrera, 843 F.2d 1576, 1579 (10th Cir.1988)).

Courts in other circuits have similarly concluded that:  "'[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a Franks violation.  A Franks violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth.'"  United States v. McAllister, 18 F.3d 1412, 1417 (7th Cir.1994) (quoting United States v. Pritchard, 745 F.2d 1112, 1119 (7th Cir.1984)).  These courts have rejected requests for a Franks hearing where the defendant challenges "only the veracity of statements made by [the informant], not statements made by the warrant affiant Officer."  United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000); see generally 2 Wayne R. LaFave, Search and Seizure:  A Treatise on the Fourth Amendment, § 4.4(b), at 539 (4th ed. 2004) (collecting cases).

-14-

In light of these authorities, I conclude that Defendant's offer of proof failed to meet the standard that is required to invoke an evidentiary hearing under the framework articulated in Franks, 438 U.S. at 171-72.  I further conclude that the search warrant affidavit dated October 15, 2004, provided a substantial basis for the Lea County Magistrate Court's finding of probable cause to support the issuance of the search warrant on that date.

In this regard, I note that the search warrant affidavit shows a specific nexus between the criminal activity observed by the informant and the location of the search.  Agent Martinez states in his affidavit that he spoke to the owner of the property identified by the confidential informant as the residence of Defendant and his girlfriend, where the informant observed methamphetamine and firearms.  According to the agent's affidavit, the owner of that property advised him that she was renting the residence in question to Defendant and his girlfriend.  [Ex. 1 to Doc. No. 32.]   Thus, Agent Martinez's affidavit does not suffer from the same obvious defect as the search warrant affidavit at issue in United States v. Gonzales, 399 F.3d 1225, 1231 (10th Cir. 2005).

I recognize, of course, that the agent's effort to corroborate the fact that Defendant resided at the property in question is not alone sufficient to establish probable cause that Defendant was involved in criminal activity therein.  See United States v. Jenkins, 313 F.3d 549, 555 (10th Cir. 2002) (citing United States v. Tuter, 240 F.3d 1292, 1296 (10th Cir. 2001)); Danhauer, 229 F.3d at 1006.  But, as discussed below, the agent's affidavit contained other indicia of reliability that compensated for any deficiency occasioned by the failure to

-15-

further corroborate the confidential informant's report through personal observation.  <u>See</u>
<u>Gates</u>, 462 U.S. at 233; <u>Jenkins</u>, 313 F.3d at 553-56; <u>Mathis</u>, 357 F.3d at 1204.

The search warrant at issue in this case does not "rely upon 'the bare report of an
unknown, unaccountable informant who neither explained how he knew about the [alleged
criminal activity] nor supplied any basis for believing he had inside information about [the
suspect].'" <u>Tuter</u>, 240 F.3d at 1296 (quoting <u>Florida v. J.L.</u>, 529 U.S. 266, 271 (2000)).
Rather, this case involves a tip "from a known informant whose reputation can be assessed
and who can be held responsible if [his or] her allegations turn out to be fabricated."  <u>J.L.</u>,
529 U.S. at 270; <u>accord</u> <u>Jenkins</u>, 313 F.3d at 554-56.

In this regard, Agent Martinez's search warrant affidavit states that: "The confidential
informant has proven himself/herself reliable and credible by providing information on two
or more occasions which has led to the seizure of large quantities of illegal narcotics and the
arrest of person(s) involved in the sales of illegal narcotics." [Ex. 1 to Doc. No. 32.]  Such
declarations regarding the reliability of information supplied by an informant in the past are
a commonly accepted method of showing an informant's credibility for purposes of
establishing probable cause in a search warrant affidavit.  <u>See generally</u> 2 Wayne R. LaFave,
<u>supra</u> § 3.3(b), at 115-23 (collecting cases); <u>see, e.g.</u>, <u>United States v. $149,442.43 in U.S.</u>
<u>Currency</u>, 965 F.2d 868, 872-73 (10th Cir. 1992); <u>United States v. Corral</u>, 970 F.2d 719, 727
(10th Cir. 1992).

In addition, the confidential informant's statements about witnessing Defendant
engage in criminal activity in his residence are based on first-hand knowledge and contain

-16-

some degree of detail with respect to the type of drug observed (methamphetamine), as well as the timing and location of such observations. Such detailed firsthand knowledge is generally recognized as "the surest way to establish a basis of knowledge" for a confidential informant's report when used in a search warrant affidavit. See generally 2 Wayne R. LaFave, supra, § 3.3(d), at 152-54 (collecting cases); see, e.g., Jenkins, 313 F.3d at 554-55; United States v. Bishop, 264 F.3d 919, 925 (9th Cir. 2001); United States v. Bruner, 657 F.2d 1278, 1297 (D.C. Cir. 1981).

While it is not necessarily entitled to the same weight as the factors discussed above, I also note that the search warrant affidavit contains a statement against penal interest attributed to the confidential informant, *i.e.*, the informant's admission that his or her ability to identify the substance as methamphetamine was based on "life long use." [Ex. 1 to Doc. No. 32.] Such statements against penal interest generally provide another commonly accepted method of establishing an informant's reliability or credibility. See generally 2 Wayne R. LaFave, supra, § 3.3(c), at 132 (collecting cases); see, e.g., Jenkins, 313 F.3d at 554-55; United States v. Patayan Soriano, 361 F.3d 494, 505 (9th Cir. 2004).

Viewing all of the above factors under the "totality of the circumstances" approach articulated in Gates, 462 U.S. at 233, I conclude that the Lea County Magistrate Court had a substantial basis for finding probable cause to support the issuance of a search warrant for Defendant's residence at 1613 North Camino Del Arco in Hobbs, New Mexico, on October 15, 2004. Even if such a substantial basis for a finding of probable cause was lacking, I also conclude, in the alternative, that the agents' preparation and execution of the search warrant

on that date falls under the "good faith" exception to the warrant requirement articulated in United States v. Leon, 468 U.S. 897 (1984).  See Danhauer, 229 F.3d at 1006-08.

The good-faith exception recognizes that the purposes of the exclusionary rule are not served by suppressing the fruits of a search conducted pursuant to a warrant issued in error by a neutral and detached judge where the law enforcement officer who obtains and executes the warrant has done so in good faith.  "Penalizing the officer for the magistrate [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."  Leon, 468 U.S. at 921.  The Court already has determined that Defendant did not make a sufficient showing to require an evidentiary hearing regarding whether Agent Martinez acted in bad faith by knowingly (or with reckless disregard for the truth) supplying false information in his search warrant affidavit.

In addition, the above discussion of why the search warrant affidavit provided a substantial basis for the Lea County Magistrate Court's finding of probable cause precludes a determination that the Magistrate Court wholly abandoned its judicial role or that the warrant and accompanying affidavit are so facially deficient or lacking in indicia of probable cause that the agents could not have reasonably believed they were valid.  Cf. Dannhauer, 229 F.3d at 1006-07 (listing circumstances in which the good-faith exception does not apply).  While Agent Martinez's search warrant affidavit could have been more carefully worded or included greater detail, any technical deficiencies in this regard do not add up to the kind of obvious substantive defect recognized in Gonzales, 399 F.3d at 1231.  For these

reasons, the "good faith" exception to the warrant requirement applies in the event that the Magistrate Judge erred in finding probable cause.

Because I conclude that the preparation, issuance, and execution of the initial search warrant on October 15, 2004, did not violate the Fourth Amendment, it follows that Defendant may not rely on the "fruit of the poisonous tree" doctrine as a basis for suppressing any evidence subsequently seized as a result of that search.  "A party seeking exclusion of evidence on Fourth Amendment grounds must demonstrate both actual police misconduct that violated the defendant's Fourth Amendment rights, and that the evidence to be excluded was in fact a product of the police misconduct." United States v. Williams, 356 F.3d 1268, 1272 (10th Cir. 2004) (citing United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir.2001) and United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir.2000)). "'Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the  taint of the unlawful conduct.'" DeLuca, 269 F.3d at 1132 (quoting Nava-Ramirez, 210 F.3d at 1131) (citations omitted). See Williams, 356 F.3d at 1273 (citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)).

In this case, Defendant has failed to make either of the two showings required to invoke the "fruit of the poisonous tree" doctrine.  Apart from his challenge to the search warrant affidavit dated October 15, 2004, Defendant provides no evidence or authority in

support of any other basis for suppressing the evidence seized from his residence or his person.

In particular, Defendant provides no evidence or authority to dispute that the evidence seized from his residence pursuant to the search warrant issued on October 15, 2004, established a substantial basis for a finding of probable cause to issue and execute a warrant for Defendant's arrest on November 12, 2004.  Defendant also provides no evidence or authority to dispute that the officers acted within the lawful scope of a search incident to arrest when they searched Defendant's person on the latter date.  Accordingly, there is no basis for invoking the exclusionary rule with respect to any evidence seized from Defendant's residence or his person, and Defendant's motion is denied with respect to such evidence.

**B.      The Warrantless Search of the GMC Yukon on April 4, 2005**

Defendant also contends that the firearm discovered by Agent Moon on April 4, 2005, must be suppressed on the independent grounds that Agent Moon's inspection of  the GMC Yukon on that date was "an invalid warrantless search that did not fall under the inventory search exception to the warrant requirement."  [Doc. No. 24, at 3.]  Although Defendant did not provide any citation to authority or evidence to support this contention in his *Motion to Suppress*, this somewhat novel and multi-faceted issue was fleshed out during the suppression hearing, and the parties were afforded the opportunity to file supplemental briefs in response to the testimony developed at the hearing.  [Doc. No. 35, 37, 38.]

In its response brief, the Government first contended that Agent Moon's search of the GMC Yukon fell under the "automobile exception" to the warrant requirement, regardless of the delay between the date of the vehicle's seizure and the date of the search.  The Government then filed an addendum to its response brief asserting that Defendant lacked standing and that Agent Moon's conduct did not amount to a search for Fourth Amendment purposes.  In its supplemental brief filed in accordance with the Court's instructions at the suppression hearing, the Government included additional authority to support the proposition that the fruits of Agent Moon's search fall under the inevitable discovery exception for inventory searches.  I find that all of these arguments were properly raised and preserved given the manner in which the issues unfolded at the suppression hearing.[3]

I first address the issue of Defendant's standing.  In order to properly invoke this Court's jurisdiction, Defendant must establish his standing to challenge Agent Moon's search beneath the vehicle's cup holder on April 4, 2005.  While Defendant obviously has standing to challenge the seizure of his person that occurred several months earlier on November 12, 2004, see United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996), he has established no illegality with respect to his arrest on that date which would require suppression of evidence subsequently seized from the GMC Yukon as "fruit of the poisonous tree."  In addition, it is well-established that law-enforcement officers may seize a vehicle in a public place without a warrant if there is probable cause to believe that the vehicle itself is subject

---

[3]At the conclusion of the suppression hearing, this Court granted the parties additional time and opportunity in which to brief the issues raised.

to forfeiture.  See Florida v. White, 526 U.S. 559, 566 (1999); cf. State ex rel. Dep't of Public Safety v. One 1990 Chevrolet Pickup, 115 N.M. 644, 648-49, 857 P.2d 44, 48-49 (Ct. App. 1993) (construing New Mexico's forfeiture statute).  Defendant provides no evidence or authority to dispute that the agents lawfully seized the GMC Yukon he was driving on November 12, 2004, based on the existence of probable cause to believe that the vehicle was subject to forfeiture.  He also presents no evidence or authority to dispute that the vehicle lawfully remains in police custody during the pendency of the forfeiture proceedings.

Lacking any other basis for challenging Agent Moon's subsequent inspection of the GMC Yukon on April 4, 2005, it is Defendant's burden to establish that he has an interest in the vehicle and its contents that is protected by the Fourth Amendment.  See United States v. Arango, 912 F.2d 441, 444 (10th Cir. 1990); United States v. Rascon, 922 F.2d 584, 587 (10th Cir. 1990).  The existence of a cognizable Fourth Amendment right to be free from unreasonable searches and seizures of a motor vehicle depends on two factors:  whether the individual in question has exhibited a subjective expectation of privacy in the vehicle, and whether society recognizes that subjective expectation as reasonable.  See Rascon, 922 F.2d at 586.  Although formal documentation (such as a certificate of title or registration form) is not necessarily required in order to establish proof of ownership or legitimate possession, mere possession or control of the vehicle alone is not sufficient to satisfy this test.  See United States v. Jefferson, 925 F.2d 1242, 1249-50 (10th Cir. 1991); Arango, 912 F.2d at 445.

In this case, there was nothing in the record *prior* to the suppression hearing that indicated that Defendant was claiming ownership or legitimate possession of the GMC Yukon or its contents at the time of Agent Moon's search.  At the suppression hearing, however, Defendant presented testimony that established more than mere possession or control of the vehicle at the time of his arrest.  Although Defendant admitted in the forfeiture proceedings that the mother of his common-law wife, Ritanella Baldwin, is the registered owner of the GMC Yukon, Defendant now claims that he and his common-law wife regularly used that vehicle with the mother's permission during the time leading up to the vehicle's seizure on November 12, 2004.  Defendant testified that the DVD screens were installed for the use of his children while riding in the Yukon.  Defendant's testimony at the suppression hearing also evinced an expectation that he will continue to be a frequent permissive user of the vehicle in the event that it is returned to the mother at the conclusion of the forfeiture proceedings.

While I offer no opinion as to what Defendant's property interests in the vehicle or its contents may be for purposes of the forfeiture proceedings, I conclude that his testimony at the time of the suppression hearing meets the minimum elements required to establish his standing to challenge Agent Moon's search of the GMC Yukon.  See Jefferson, 925 F.2d at 1249-50; Arango, 912 F.2d at 445.  Because Defendant met his burden of establishing standing to contest the search of the GMC Yukon in the case at bar, the burden shifts to the Government to prove that the warrantless search of this vehicle on April 4, 2005, was

"reasonable" within the meaning of the Fourth Amendment.  See United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993).

Defendant contends that the Government cannot meet its burden because Agent Moon candidly admitted that his entry and inspection of the GMC Yukon was prompted by his curiosity about the vehicle's high-end, after-market stereo and DVD system, and not by any standard police procedure or recognized law-enforcement objective.  Obviously, Agent Moon's subjective desire to inspect the vehicle's stereo and DVD system does not, in and of itself, establish any recognized exception to the Fourth Amendment's warrant requirement.

The Government, on the other hand, attributes different consequences to Agent Moon's subjective motivations for looking underneath the vehicle's cup holder.  In an addendum to its response brief, the Government contended that Agent Moon's subjective motivations for this search meant that his actions did not amount to a "search" governed by the Fourth Amendment, and thus there was no need to demonstrate the reasonableness of his actions.

I conclude that both parties' contentions are wrong insofar as they assume that Agent Moon's subjective motivations for looking beneath the GMC Yukon's cup holder are dispositive.  With few exceptions not directly relevant here, both the Supreme Court and the Tenth Circuit have made clear that the existence of a warrantless search and its reasonableness are to be measured by an objective standard rather than the subjective motivations of the officer performing the search.  See Arkansas v. Sullivan, 532 U.S. 769,

-24-

771-72 (2001); <u>Whren v. United States</u>, 517 U.S. 806, 812-13 (1996).  "The subjective intentions or state of mind of either the defendant or police is irrelevant to Fourth Amendment analysis" in most contexts.  <u>United States v. Sanchez</u>, 89 F.3d 715, 718 (10th Cir. 1996).

It follows, then, that Agent Moon's opening of the closed compartment in the GMC Yukon constituted a "search" within the meaning of the Fourth Amendment regardless of his subjective reasons for wanting to open it.  <u>See</u> <u>United States v. Maple</u>, 348 F.3d 260, 263 (D.C. Cir. 2003).  Inasmuch as they intrude upon areas in which individuals have legitimate expectations of privacy, "inventories and similar intrusions into vehicles *are* searches within the meaning of the Fourth Amendment notwithstanding the absence of a purpose contemplating seizure of evidence."  3 Wayne R. LaFave, <u>supra</u> § 7.4, at 630.

By the same principle, however, Agent Moon's curious motive for looking underneath the vehicle's cup holder does not necessarily render the search "unreasonable" under the Fourth Amendment.  Indeed, the objective reasonableness of searching the vehicle at that time and location does not depend on any one factor or series of factors.  Instead, the Court must look to the totality of the circumstances.  <u>See</u> <u>Gates</u>, 462 U.S. at 238.

The circumstances of Agent Moon's search are distinguishable from <u>Maple</u>, 348 F.3d at 261-64, because in that case there was no finding that the officer had probable cause to seize the vehicle or search it for evidence of crime, and the vehicle had not been impounded at a police facility.  Rather, Mr. Maple was arrested for a traffic violation, and the search of his car occurred while the officer was moving it from the roadway to a lawful parking space.

See United States v. Maple, 334 F.3d 15, 16-17 (D.C. Cir. 2003) (earlier opinion, vacated in part on rehearing, in which the facts of the case are described in greater detail).

In the present case, the GMC Yukon was lawfully in the custody of the Lea County Drug Task Force during the pendency of the forfeiture proceedings.  The agents of that task force had probable cause to believe that the vehicle contained contraband and was itself subject to forfeiture.  In this regard, I note that the search warrant dated October 15, 2004, lists the GMC Yukon (described as a "GMC sport utility vehicle") as one of the items to be searched at Defendant's residence [Ex. A to Doc. No. 25], and the search warrant of November 12, 2004, similarly authorizes a search of "all . . . vehicles" found at that address [Ex. B to Doc. No. 25.]  These warrants were issued based on findings of probable cause to believe that the items or places listed therein contained contraband, and Agent Martinez's testimony at the suppression hearing, as well as his search warrant affidavits, provide a substantial basis for those findings.

It follows that the agents of the Lea County Drug Task  Force had probable cause to believe that the GMC Yukon contained contraband, in addition to being subject to forfeiture, for the reasons stated in the search warrant affidavits and in Agent Martinez's testimony at the suppression hearing.  Under the "automobile exception" to the warrant requirement, the agents could search the GMC Yukon on the basis of probable cause alone even if the search warrants themselves did not expressly authorize them to search the vehicle on November 12, 2004, or thereafter.  See generally Florida v. Myers, 466 U.S. 380, 382 (1984); Michigan v.

Thomas, 458 U.S. 259, 261 (1982) (per curiam); Texas v. White, 423 U.S. 67, 68 (1975) (per

curiam); Chambers v. Maroney, 399 U.S. 42, 51-52 (1970).

Similarly, the agents need not rely on the doctrine of search incident to arrest in these

circumstances because they had already developed probable cause to search the GMC Yukon

for contraband, as well as to arrest Defendant.  In this regard, the Tenth Circuit has held that:

 "if the police, while making an arrest, find probable cause to search the arrested individual's

automobile, such a search then 'proceeds on a theory wholly different from that justifying

the search incident to an arrest.'"  United States v. McKinnell, 888 F.2d 669, 673 (10th Cir.

1989) (quoting Chambers, 399 U.S. at 49).

Here the agents found a relatively large amount of cash and methamphetamine on

Defendant's person at the time of his arrest, and these discoveries were corroborated by other

incriminating evidence (including drugs, guns, and other paraphernalia) found during the

searches of his residence on October 15, 2004, and November 12, 2004.  Further, the search

warrant affidavits and testimony at the suppression hearing indicated that Defendant was in

the GMC Yukon at the time of his arrest and had recently driven from his residence.  These

facts support a finding of probable cause to search the vehicle, including the area under the

cup holder, for contraband.  "Because it is probable cause, not the arrest, that is then the

justification for the search of the automobile, the police may search the impounded

automobile at a later time . . . in a protected and controlled environment."  Id.

It is certainly arguable that a lengthy delay between an arrest and a search of a vehicle

could render that search unreasonable if the delay in conducting the search was the only

reason why the vehicle remained in police custody during that period.  But that is not the case here.  Regardless of the timing of the search, the agents had lawful authority to keep the GMC Yukon in police custody during the pendency of the forfeiture proceedings, and the record contains no evidence that Defendant made a claim for the return of any property in the vehicle between the time of his arrest and Agent Moon's search.

The fact that the GMC Yukon was in police custody pursuant to a finding of probable cause that it is subject to forfeiture provides another basis for authorizing the agents to search the vehicle without an additional warrant.  Citing a Supreme Court opinion upholding the search of a car impounded under a state forfeiture statute, the Tenth Circuit has held that "an officer who has probable cause to seize a vehicle may conduct a search of the vehicle without a warrant irrespective of whether the search or seizure took place first."  United States v. Merryman, 630 F.2d 780, 785 (10th Cir. 1980) (citing Cooper v. California, 386 U.S. 58 (1967)).  Other circuits have expanded on this principle by reasoning that "where police have probable cause to believe a car is subject to forfeiture, or have validly seized a car for forfeiture, the police may search the car without a warrant."  United States v. Pace, 898 F.2d 1218, 1245 (7th Cir. 1990) (collecting cases).  In other words, "'once a car is validly seized for forfeiture, it can be searched *at will*, without a warrant.'"  Id. (quoting, with emphasis added, United States v. Alvarez, 833 F.2d 724, 728 (7th Cir. 1987)); accord United States v. Decker, 19 F.3d 287, 290 (6th Cir. 1994).

Based on these authorities, I conclude that Agent Moon's search of the vehicle on April 4, 2005, was not "unreasonable" within the meaning of the Fourth Amendment because

the agents possessed probable cause and, therefore, could have searched the vehicle at will without a further warrant while the vehicle was seized for purposes of state forfeiture proceedings. I also conclude, in the alternative, that even if Agent Moon's search of the GMC Yukon on April 4, 2005, was itself unreasonable, the agents would have inevitably discovered the firearm underneath the vehicle's cup holder during a lawful inventory search conducted pursuant to standard operating procedures at the conclusion of the forfeiture proceedings.

In this regard, Agent Martinez credibly testified that such an inventory search (or any other type of comprehensive search of the vehicle) had not yet been conducted at the time of Agent Moon's actions on April 4, 2005. Agent Martinez also testified, however, that it is the standard practice of his agency to conduct an inventory search at the conclusion of the forfeiture proceedings, either before the vehicle is returned to its private owner, or before the vehicle is disposed of in the event that the forfeiture proceedings result in a judgment favorable to the Government. According to Agent Martinez's testimony, such a search would cover "all areas where contraband or valuables could be kept" in the vehicle, because the purpose of the inventory search is to make sure that any personal effects in the vehicle are returned to their rightful owners before the vehicle is forfeited, or to ensure that everything (including any such personal effects) is returned to the rightful owner along with the vehicle in the event that it is not forfeited.

I conclude that the circumstances of this case fall within the parameters of the inevitable discovery exception for inventory searches that the Tenth Circuit has recognized

in other cases.  See United States v. Souza, 223 F.3d 1197, 1203 (10th Cir.2000) (collecting cases).  In particular, I find that a search of the area immediately beneath the vehicle's cup holder, where the firearm was located, would not exceed the scope of a lawful inventory search.

At the parties' request at the conclusion of the suppression hearing, I inspected the GMC Yukon's passenger compartment and center console area, including the cup holder and the space beneath it.  The cup holder consists of one unit which holds two cups.  Based on my inspection and the supporting testimony presented at the suppression hearing, I determined that the vehicle's cup holder was easily lifted from the center console for normal cleaning purposes without any special tools or special knowledge of automobile mechanics, and the area where the firearm was located appears in plain view once the cup holder is lifted up from the console.  Thus, the facts of this case are readily distinguishable from United States v. Lugo, 978 F.2d 631, 633-34, 637 (10th Cir. 1992), in which the Tenth Circuit held that an elaborate procedure to remove a truck's door panel and inspect the area behind it with a flashlight did not fall within the lawful scope of an inventory search.

Lugo is also distinguishable because that case involved an individual who was arrested because of his inability to post a $340 bond for a traffic violation, and who was forthright in telling the officers that he had a firearm in his vehicle and where it was located.  See id. at 633.  In contrast, the inventory search at issue in this case would have occurred after the agents found not only extensive evidence linking Defendant to drug trafficking and a collection of firearms, but also evidence that Defendant had gone to great lengths to

conceal his activities from the police, including hiding methamphetamine in his crotch area--where it could only be discovered through a strip search--and keeping counter-surveillance equipment such as police scanners at his residence.  In addition, it was obvious to the agents that the GMC Yukon was a customized vehicle containing expensive, after-market stereo equipment and other accessories that would have warranted extra care and scrutiny in the event of an inventory search.  To the extent that the agents would have required any further justification to include the area beneath the GMC Yukon's cup holder in an inventory search to ensure that nothing was damaged or missing from the vehicle, I conclude that all of these facts provided such justification.

On these facts, the agents had a reasonable basis for inferring that Defendant may have concealed valuable items of personal property in the GMC Yukon, and that these items may have included contraband or firearms in the front console area beneath the cup holder.  Both the Supreme Court and the Tenth Circuit have recognized an inventory search as a legitimate means of protecting the public from the danger created by releasing a vehicle from police custody with a weapon or other dangerous item left inside it.  See Cady v. Dombrowski, 413 U.S. 433, 447-48 (1975); United States v. Johnson, 734 F.2d 503, 505 (10th Cir. 1984).

Finally, even in the absence of the recognized exception to the warrant requirement for inventory searches, the inevitable discovery doctrine "may apply where, in addition to the existence of probable cause, the police had taken steps in an attempt to obtain a search warrant."  Souza, 223 F.3d at 1203; accord United States v. Cunningham, 413 F.3d 1199,

1203 (10th Cir. 2005). That is certainly the case here, as before Agent Moon's search of the GMC Yukon, the agents already had obtained no less than three warrants, and they also had initiated forfeiture proceedings in state court. The agents also made a strong showing that probable cause to search the GMC Yukon continued to exist at the time of Agent Moon's actions, and their conduct does not evince any bad-faith effort to circumvent the warrant requirement or evade judicial review of their probable-cause determinations. Thus, as in Cunningham, 413 F.3d at 1204-05, this case is not one in which the police "'jumped the gun' due to a lack of confidence about probable cause and out of a desire to force the issue."

I therefore conclude that "a proper consideration of the relevant factors" yields the conclusion that "the challenged evidence would inevitably have been discovered by independent lawful means." Souza, 223 F.3d at 1206. "When . . . the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." Nix v. Williams, 467 U.S. 431, 448 (1984). For all of the above reasons, Defendant's motion to suppress the firearm that Agent Moon discovered in the GMC Yukon on April 4, 2005, is denied.

III.   **CONCLUSION**

For the foregoing reasons, the preparation, issuance, and execution of the search warrant on October 15, 2004, did not violate the Fourth Amendment, and there is no basis for excluding any of the evidence subsequently obtained as a result of the search executed pursuant to that warrant, including the firearm discovered in the GMC Yukon.

**IT IS, THEREFORE, ORDERED** that *Defendant Nathan P. Webster's Motion to Suppress Evidence* [Doc. No. 24] is **DENIED**.

**SO ORDERED** this 31st day of August, 2005, in Las Cruces, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge